UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

BONNIE MOSLEY,

    Plaintiff,

v.

GENERAL REVENUE CORP.,
a foreign limited liability company,

    Defendant,

_____/

**COMPLAINT**

## **CLASS ACTION COMPLAINT**

1. Plaintiff Bonnie Mosley ("Plaintiff") brings this action to enforce her rights, and the rights of others, under the consumer-privacy provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"), a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012). Plaintiff also advances this case under the Illinois Automatic Telephone Dialers Act ("ATDA"), 815 ILCS 305 *et seq.*

2. Defendant General Revenue Corp. ("GRC"), on its own, or through one of its vendors, sought to collect debts from putative class members such as Plaintiff by bombarding their cellular phones with automated and prerecorded robocalls without prior express consent. In fact, GRC continued to do so even *after* being instructed to stop.

3. A class action is the best means of obtaining relief for GRC's systematic violations of the TCPA, and is consistent with both the private right of action provided by the TCPA, and fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**PARTIES**

4. Plaintiff is a natural person who resides in Springfield, Illinois.

5. GRC is a debt collection agency with its principal place of business at 4660 Duke Drive, Suite 300, Mason Ohio 45040.

## JURISDICTION AND VENUE

6. This Court has federal question jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331.

7. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they arise out of the same acts and omissions as the TCPA claim.

8. Venue in this District is proper because the acts occurred here.

## THE TCPA

9. Congress enacted the TCPA in 1991, in response to a growing number of consumer complaints regarding robocalls.

10. Senator Hollings, the TCPA's primary drafter and sponsor, described these calls as:

> "the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall."

137 Cong. Rec. 30, 821 (1991).

11. Despite the penalties put in place nearly three decades ago, robocall abuse has skyrocketed.

12. This statute was designed to combat real harm. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

13. The TCPA prohibits the use of an "automatic telephone dialing system" ("ATDS"),[1] artificial voice, or pre-recorded voice when placing calls to cellular telephone numbers in the absence of an emergency or the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A).

14. Under the FCC's rules, the entity that initiates prohibited telephone calls is directly liable for the calls. *In re Dialing Services, LLC*, 29 FCC Rcd. 5537, 5542-43 (2014). "A person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call." *Id.* Such steps include, but are not limited to: (1) providing a software platform for making robocalls; (2) leasing or otherwise securing telephone connections for making robocalls; (3) purchasing [lead] lists; (4) providing technical support; (5) reviewing and/or editing messages; (6) reviewing phone numbers to determine if they are valid; (7) transmitting the calling party's number to be displayed by the call recipient's caller identification services; (8) storing the prerecorded message on a server; (9) playing a recorded message to a called party; (10) detecting whether a call is answered by a live person or by an answering machine; (11) providing reports of call history, results, and polling; and (12) dialing telephone numbers." *Shamblin v. Obama for Am.*, 2015 U.S. Dist. LEXIS 50989, *12-13 (M.D. Fla. 2015), citing *In re Dialing Services, LLC*, 29 FCC Rcd. at 5543-44 (2014)

15. In addition, the entity on whose *behalf* prohibited calls are made is vicariously liable for the calls under principals of classical agency or actual authority, apparent authority, and ratification. *In re Dish Network LLC*, 28 FCC Rcd. 6574, 6584 (2013).

16. The FCC also held "[c]onsumers may revoke consent in any manner that clearly expresses a desire not to receive further messages, and that callers may not infringe on that ability by designating an exclusive means to revoke." *In the Matter of Rules and Regulations Implementing*

---

[1] "A predictive dialer constitutes an 'automatic telephone dialing system' and is subject to the TCPA's restrictions in the use of autodialers." *Blow v. Bijora, Inc.*, 855 F.3d 793, 801 (7th Cir. 2017), quoting *In re Rules and Regulations Implementing the TCPA*, 23 FCC Rcd. 559, 566 (2008).

*the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, FCC 15-72, 2015 FCC LEXIS 1586, ¶ 63, 30 FCC Rcd 7961, 2015 FCC LEXIS 1586, 62 Comm. Reg. (P & F) 1539 (F.C.C. July 10, 2015) ("FCC 2015 Order").

17. Verbal instructions to cease collection calls apply to the TCPA and thus effectively revoke any prior consent the caller may have had.

18. The TCPA provides consumers with a private right of action to enforce its requirements.

19. Nevertheless, consumer complaints about this conduct have only increased since the TCPA's enactment. "If robocalls were a disease, they would be an epidemic." *Rage Against Robocalls*, Consumer Reports (July 28, 2015). "Robocalls" are the #1 consumer complaint in America today and GRC's conduct in this case is exemplary of why that is so.

## THE ILLINOIS ATUTOMATIC TELEPHONE DIALERS ACT

20. In 2013, the ATDA was enacted with unanimous approval by the Illinois legislature.

21. Like the TCPA, the ATDA prohibits, *inter alia*, "play[ing] a prerecorded message placed by an autodialer without the consent of the called party." 815 ILCS 305/15(d). The ATDA provides for treble actual damages, statutory damages of $500 per violation, plus costs and reasonable attorneys' fees. 815 ILCS 305/30.

## FACTS

22. On or about October 2018, GRC began placing phone calls to Plaintiff's cellular telephone number.

23. GRC placed all of these calls using a pre-recorded voice message indicating to Plaintiff that she had to contact GRC regarding an alleged debt in order to prevent GRC from taking legal action against her.

24. However, Plaintiff has never had any business or contractual relationship with GRC, nor did she ever owe any money to GRC.

25. When Plaintiff did not answer the calls, GRC left a voice message. Sometimes the message consisted of "dead air," which is indicia that the calls were being placed with an automated or predictive dialing system.

26. Other times, the message was a pre-recorded voice, directing Plaintiff to contact GRC. These messages sometimes started mid-message, leaving no doubt that it was an prerecorded voice message.

27. Plaintiff has never provided GRC with prior express consent to call her cellular telephone for any reason.

28. In addition, during several calls, the first of which occurred on or about December 2018, Plaintiff instructed GRC to stop calling her cellular telephone number. In so doing, Plaintiff revoked any consent GRC could claim or believed it had to call her cellular telephone number.

29. Nevertheless, GRC continued to place dozens of calls to Plaintiff's cellular telephone number between December 2018 and February 2019 — sometimes as many as three per day — using and ATDS and/or prerecorded voice message.

30. Plaintiff and all members of the Classes (defined *infra*), have been harmed by the acts of GRC. Not only has GRC violated legally protected rights bestowed upon them by Congress and the Illinois legislature, but their privacy has been violated by the incessant calls from GRC. The calls also subjected Plaintiff and many members of the Classes to harassment and were designed to oppress them by threatening legal action associated with collection of a debt they did not owe. The calls further constitute a nuisance and were designed to disrupt the peace of Plaintiff and other putative class members. These calls further wasted Plaintiff and class members' time, and intruded upon and occupied the capacity of their cellular phones and wasted their cellular battery.

## CLASS ALLEGATIONS

31. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of the following classes of persons or entities similarly situated throughout the United States.

32. The classes of persons Plaintiff propose to represent are tentatively defined as:

### The TCPA Class

All persons within the United States to whom (1) GRC and/or a third party acting on GRC's behalf, made one or more non-emergency telephone calls (2) to a cellular telephone number (3) using substantially the same dialing system used to call Plaintiff (4) within four years of the filing of this Complaint through the date of trial, (5) without consent of the called party.

### The Prerecorded Voice Class

All persons within the United States to whom (1) GRC and/or a third party acting on GRC's behalf, made one or more non-emergency telephone calls (2) to a cellular telephone number (3) whereby a prerecorded voice message was played, (4) within four years of the filing of this Complaint through the date of trial, (5) without consent of the called party.

### The Revocation/ Class ATDS

All persons within the United States to whom (1) GRC and/or a third party acting on its behalf, made one or more non-emergency telephone calls (2) to a cellular telephone number (3) using the same dialing system it used to call Plaintiff (4) within four years of the filing of this Complaint through the date of trial (5) after receiving a request to stop or to no longer call that number.

### The Revocation Class Prerecords

All persons within the United States to whom (1) GRC and/or a third party acting on its behalf, made one or more non-emergency telephone calls (2) to a cellular telephone number (3) whereby a prerecorded voice message was played (4) within four years of the filing of this Complaint through the date of trial (5) after receiving a request to stop or to no longer call that number.

**The Illinois ATDA Class**

All Illinois residents to whom (1) GRC and/or a third party acting on its behalf, made one or more non-emergency telephone calls (2) to a residential or cellular telephone number (3) whereby a prerecorded voice message was played, (4) within the applicable statute of limitations (5) whereby GRC did not have consent, or a prior or existing business relationship.

**The Illinois ATDA Revocation Class**

All Illinois residents to whom (1) GRC and/or a third party acting on its behalf, made one or more non-emergency telephone calls (2) to a residential or cellular telephone number (3) whereby a prerecorded voice message was played, and (4) within the applicable statute of limitations (5) whereby the recipient of the call told GRC to stop calling.

The above classes are collectively referred to as "the Classes."

33. Excluded from the Classes is GRC, any entities in which GRC has a controlling interest, GRC's agents and employees, any judge to whom this action is assigned, and any member of such Judge's staff and immediate family.

34. The disposition of the claims in a class action provide substantial benefit to both the parties and the Court by avoiding multiplicity of identical suites.

35. The Classes are identifiable through phone records and phone number databases.

36. Plaintiff is unaware of the precise number of putative class members, but estimates that the number is in the thousands, marking joinder of these persons impracticable.

37. Plaintiff is a member of each of the Classes.

38. There are questions of law and fact common to Plaintiff and to the Classes, including, but not limited to, the following:

    a. Whether GRC placed the calls at issue using an ATDS;

    b. Whether GRC engaged in a practice of using prerecorded messages when placing debt collection calls;

 c. Whether GRC placed the Calls at issue without first obtaining the recipients' prior express consent;

 d. Whether GRC had a prior or existing business relationship with Illinois residents (Illinois ATDA Subclass);

 e. Whether GRC's actions and inactions were willful or knowing;

 f. Whether GRC continued to place the calls at issue after the members of the Classes requested GRC to stop doing so; and

 g. Whether Plaintiff and the class members are entitled to statutory damages as a result of GRC's actions.

39. Plaintiff's claims are typical of the claims of the other members of the Classes.

40. Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of the Classes, she will fairly and adequately protect the interests of the Classes, and she is represented by counsel skilled and experienced in class actions, including TCPA class actions.

41. The actions of the GRC are generally applicable to the Classes as a whole and to Plaintiff.

42. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by GRC and/or its agents.

43. The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case, particularly given the relatively modest value of each individual claim.

44. Management of these claims is likely to present significantly fewer difficulties than are

presented in many class claims because the calls at issue are all automated and the class members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

45. Plaintiff is not aware of any other existing class actions concerning this controversy already commenced by others who meet the criteria for class membership described herein.

## LEGAL CLAIMS

### Count I:
### Violations of the TCPA

46. Plaintiff incorporates the foregoing factual allegations as if though fully set forth herein.

47. The telephone call from GRC to Plaintiff's cellular telephone number were made using an ATDS.

48. Some of the telephone call from GRC to Plaintiff's cellular telephone number includes prerecorded voice messages.

49. GRC, or its agents, placed calls to Plaintiff at a telephone number assigned to a cellular telephone service.

50. GRC was aware Plaintiff's telephone number was assigned to cellular telephone service at the time it placed, or caused it's agent to place, calls to Plaintiff.

51. The telephone calls placed by or on behalf of GRC to Plaintiff were not placed for emergency purposes, as defined by TCPA § 227 (b)(1)(A)(i).

52. At the time GRC placed the phone calls alleged herein, GRC did not have prior express consent to call Plaintiff's cellular telephone.

53. Plaintiff never provided GRC her telephone number.

54. Plaintiff never provided GRC consent to call her cellular number after she instructed GRC to stop calling.

55. GRC's policies and procedures are structured such that calls continue even after an individual revokes consent, or instructs GRC to stop calling.

56. GRC's Defendants' policies and procedures provided no means for the Plaintiff to have her cellular number removed from the call list.

57. GRC has a corporate policy of using an ATDS message to collect debts from individuals such as Plaintiff for its financial benefit.

58. GRC has a corporate policy of using prerecorded or artificial voice message to collect debts from individuals such as Plaintiff for its financial benefit.

59. GRC has received numerous complaints asserting similar contentions as those set out herein; specifically, that –

   a. GRC places robocalls attempting to collect debts on accounts that do not belong to the called party.

   b. GRC continues to place robocalls after the called party instructs GRC they have the wrong number.

   c. GRC continues to place robocalls after the called party instructs GRC to stop calling.

60. GRC has therefore violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), which makes it unlawful for any person within the United States "... to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... ".

61. As a result of GRC's illegal conduct, the members of the Classes suffered actual damages and, under § 227(b)(3)(B), and are each entitled to, inter alia, a minimum of $500.00 in damages for each such violation of the TCPA.

62. GRC's violation of the TCPA were conducted willfully and knowingly, entitling Plaintiff and members of the Classes to up $1,500.00 for each violation.

63. GRC has acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the class as a whole appropriate.

64. Moreover, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## Count II:
## Violations of the Illinois ATDA

65. Plaintiff incorporates the foregoing factual allegations as if though fully set forth herein.

66. The ATDA prohibits "play[ing] a prerecorded message placed by an autodialer without the consent of the called party." 815 ILCS 305/30(b).

67. Under the ATDA, an "autodialer" or "autodialer system" is defined as "any telephone dialing or accessing device, machine, computer or system capable of storing telephone numbers which is programmed to sequentially or randomly access the stored telephone numbers in order to automatically connect a telephone with a recorded message[.]" 815 ILCS 305/5(a).

68. A "recorded message" refers to "any taped communication soliciting the sale of goods or services without live voice interaction." 815 ILCS 305/5(c).

69. GRC did not have the consent of Plaintiff or the other putative class members to play a prerecorded message placed by an autodialer.

70. Nonetheless, GRC used an autodialer to call Plaintiff and putative class members' phones and play a prerecorded message.

71. Consequently, GRC violated the ATDA by playing a prerecorded message placed by an autodialer, without such persons' consent.

72. As a result of GRC's conduct and pursuant to Section 30(c)-(c-5) of the ATDA, Plaintiff and members of the Illinois ATDS Subclass were harmed and are each entitled to statutory damages of $500 per violation and three times any actual damages, as well as costs and attorneys' fees. 815 ILCS 305/30(c)-(c-5).

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgement in her favor and in favor of the Classes, and against Defendant, GRC, by providing relief as follows:

A. Certification of the proposed Classes;

B. Appointment of Plaintiff as representatives of the Classes;

C. Appointment of the undersigned counsel as Class Counsel;

D. A declaration that GRC's actions complained of herein violated the TCPA;

E. A declaration that GRC's actions complained of herein violated the Illinois ATDA;

F. An order enjoining GRC and/or its affiliates, agents, and/or other related entities, as provided by law, from using pre-recorded messages to make debt collection calls;

G. An award of $500.00 statutory damages under the TCPA and Illinois ATDA for each unlawful call made to Plaintiff and the Classes;

H. An award of treble damages ($1,500.00 per unlawful call), as provided under the TCPA, for GRC's willful and knowing violations;

I. An award of treble damages ($1,500.00 per unlawful call) as provided for under the Illinois ATDA;

J. An award of costs incurred;

K. Reasonable attorney's fees incurred, as provided for under the Illinois ATDA;

L. Leave to amend this Complaint to conform to the evidence presented at trial; and

  M. Orders granting such other and further relief as the Court deems necessary, just, and proper.

  Plaintiff hereby demands a jury trial as to all claims.

          Respectfully Submitted,

          /s/ Keith J. Keogh
          KEOGH LAW, LTD.
          Keith L. Keogh
          55 W. Monroe St., Ste. 3390
          Chicago, IL 60603
          (312) 726-1092 / (312) 726-1093
          keith@keoghlaw.com

          *Attorneys for Plaintiff*
          *and the Proposed Classes*