E-FILED
Thursday, 19 March, 2020  04:12:06 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRCIT OF ILLINOIS
PEORIA DIVISION**

| | | |
|---|---|---|
| BONNIE MOSLEY, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:20-cv-01012-JES-JEH |
| v. | ) ) ) | |
| GENERAL REVENUE COPORATION, | ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO GENERAL
REVENUE COPRRATION'S MOTION TO DISMISS IN PART**

For her response in opposition to Defendant General Revenue Corporation's motion to dismiss in part (ECF No. 11), Plaintiff Bonnie Mosley ("Plaintiff") states as follows:[1]

## INTRODUCTION

This putative class action asserts two separate claims against General Revenue Corporation ("GRC") for violating two distinct prohibitions of the Telephone Consumer Protection Act ("TCPA")—the prohibition against calling cellphone numbers using a prerecorded or artificial voice, and the prohibition against calling cellphone numbers using an automatic telephone dialing system ("ATDS"). *See Compl.* ¶¶ 22-29, 46-48 (ECF No. 1). In its motion, GRC concedes that Plaintiff's prerecorded and artificial voice claims are not subject to dismissal. GRC argues only that the ATDS claims should be dismissed.

GRC's motion fails for three reasons. First, Plaintiff's factual allegations establish a facially-plausible claim that the system GRC used to make debt-collection robocalls to Plaintiff is

---

[1] Plaintiff does not oppose General Revenue Corporation's request to dismiss the claims asserted under Illinois's Automatic Telephone Dialers Act, 815 ILCS 305/1, *et seq.*

an ATDS.

Second, GRC's entire argument hangs on the premise that Plaintiff purportedly alleges GRC used a predictive dialer system to make the calls.  This premise misrepresents Plaintiff's allegations.  More importantly, GRC's assertion a predictive dialer cannot constitute an ATDS is baseless.  Courts adopting the same definition of ATDS espoused by *Gadelhak v. AT&T Servs.*, No. 19-1738, __ F.3d __, 2020 U.S. App. LEXIS 5026 (7th Cir. Feb. 19, 2020) hold that predictive dialers can satisfy that definition depending on their capacity to use other calling modes.

Third, GRC's motion incorrectly insinuates that whether a dialer system constitutes an ATDS turns on how the system was actually used to make the calls at issue.  By contrast, however, courts agree the TCPA explicitly includes capacity in the defines ATDS, which includes the dialer system's full range of calling features—irrespective of whether those features were actually used to make the offending calls.

Therefore, GRC's motion to dismiss Plaintiff's ATDS claim must be denied, as further detailed below.

## ARGUMENT

**I.  Plaintiff Adequately Pleads Facts Giving Rise to a Reasonable Inference That GRC Used an ATDS, While GRC Seeks to Prematurely Address Evidentiary Issues.**

The TCPA prohibits any person from calling any cellular telephone number "using any automatic telephone dialing system ["ATDS"] or an artificial or prerecorded voice."  47 U.S.C. § 227(b)(1)(A)(iii).  The statute defines an ATDS as "equipment which has the *capacity*—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1) (emphasis added).

"The district courts are in disagreement whether a plaintiff stating a claim under the TCPA must allege specific details to support the use of an ATDS or prerecorded voice at the pleading

stage." *See, e.g., Aguilar v. State Farm Mut. Auto. Ins. Co.*, 2017 U.S. Dist. LEXIS 34412, at *11 (C.D. Ill. Mar. 10, 2017) (Shadid, J.). Most courts in the Seventh Circuit correctly hold "plaintiffs need only allege the use of an ATDS as defined in the statute, without supporting facts." *Husain v. Bank of Am., N.A.*, 2020 U.S. Dist. LEXIS 27349, at *15 (N.D. Ill. Feb. 18, 2020) (collecting cases). This Court has cited such authority with approval, which authority acknowledges motions to dismiss such as GRC's should be denied because they seek "'to address evidentiary issues that are premature.'" *See Aguilar*, 2017 U.S. Dist. LEXIS 34412 at *13 (quoting *Torres v. Nat'l Enter. Sys.*, 2012 U.S. Dist. LEXIS 110514, at *10 (N.D. Ill. Aug. 7, 2012)).

In *Torres*, defendant NES argued the allegations did not plausibly suggest NES used an ATDS. 2012 U.S. Dist. LEXIS 110514 at *10. The court rejected that argument and denied NES's motion to dismiss, explaining:

> Torres expressly alleges repeatedly in her amended complaint that NES used an automatic telephone dialing system. . . . NES, however, is seeking to address evidentiary issues that are premature at this juncture. . . . Torres' allegations indicate that an "automatic telephone dialing system or an artificial or prerecorded voice" was used by NES, which is sufficient at this juncture. Nor would it even be reasonable to hold plaintiffs in TCPA cases to the standard proposed by NES since it would be virtually impossible, absent discovery, for any plaintiff to gather sufficient evidence regarding the type of machine used for a communication left on a plaintiff's voicemail. Under such a standard, defendants such as NES would be virtually immune to TCPA claims, which clearly is not what was intended by Congress in creating the TCPA. Thus, Torres has stated a valid TCPA claim[.]

*Id.* at *9-11 (internal citations omitted). *Accord Husain v. Bank of Am., N.A.*, 2020 U.S. Dist. LEXIS 27349, at *15-16 (N.D. Ill. Feb. 18, 2020) ("The Amended Complaint states that Defendants used a 'predictive dialer' or 'automatic telephone dialing system,' and that all calls involved a pre-recorded message that started speaking before the Plaintiffs answered the call or involved a brief pause at the outset of the call. Additional facts regarding the capacity of the machine can be ascertained during discovery; at this preliminary stage, Plaintiffs' allegations are

93129_3

sufficient.").

While other courts find it insufficient to merely generally allege use of an ATDS without further detail, even those courts only require that a plaintiff allege "additional facts supporting a reasonable inference that the defendant used an ATDS, such as . . . hearing a pause." *Husain*, 2020 U.S. Dist. LEXIS 27349 at *15; *Zeidel v. Nat'l Gas & Elec., Ltd. Liab. Co.*, 2019 U.S. Dist. LEXIS 83988, at *6 (N.D. Ill. May 17, 2019) (same); *Davis v. D.R. Horton*, 2020 U.S. Dist. LEXIS 44977, at *5 (D. Del. Mar. 16, 2020) ("courts allow cases to proceed when the plaintiff pleads *some* facts supporting an inference that the defendant *may* have used an ATDS") (emphasis added); *see also Schaefer v. IC Sys.*, 2020 U.S. Dist. LEXIS 39540, at *7-8 (E.D.N.Y. Mar. 6, 2020) ("the Court may draw a reasonable inference that ICS employed an ATDS or prerecorded voice based on Plaintiff's sworn statement that 'each call that [she] answered from [ICS] was preceded by a pause or 'dead air' before a pre-recorded voice came online'").

Here, Plaintiff's allegations satisfy both standards.  Indeed, she expressly and repeatedly alleges that GRC made the calls to her and the other class members using an ATDS.  *See Compl.* ¶¶ 2, 29, 47, 57.  She similarly alleges that an issue common to the class is "Whether GRC placed the calls at issue using an ATDS."  *Id.* ¶ 38(a).  GRC's entire argument is based on its misrepresentation that Plaintiff "alleges GRC used a predictive dialer."  *See, e.g.*, *Motion* at 9 (ECF No. 11, citing *Compl.* ¶ 25).  In fact, what Plaintiff actually alleges is that the calls were made using "an *automated* or predictive dialing system."  *Compl.* ¶ 25 (emphasis added).

In addition, Plaintiff alleges that all of the calls used the same generic prerecorded message—sometimes as frequently as three times per day—indicating Plaintiff had to contact GRC to prevent it from taking legal action against her, that the calls involved "dead air" or a pause, that the prerecorded voice messages started mid-message, and that such calls continued even after

4

Plaintiff instructed GRC to stop calling.  *Id.* ¶¶ 23, 25-26, 28-29.

Therefore, even if the Court were to apply the more stringent pleading standard (which, for the reasons explained above, would be improper), Plaintiff adequately alleges that GRC used an ATDS to make the calls.  *See Aguilar*, 2017 U.S. Dist. LEXIS 34412 at *14 (Shadid, J.) (holding plaintiff "met his minimal burden of alleging the necessary facts to show State Farm Mutual used an ATDS," reasoning "the defendant was on notice because 'the complaint plainly states that Plaintiff received at least two pre-recorded messages delivered to his cellular phone number via an ATDS'"); *Husain*, 2020 U.S. Dist. LEXIS 27349 at *15-16 (holding "Plaintiffs' complaint alleges sufficient facts to survive under either standard," as it "states that Defendants *used a 'predictive dialer' or 'automatic telephone dialing system,'* and that all calls involved a pre-recorded message that started speaking before the Plaintiffs answered the call or involved a brief pause at the outset of the call") (emphasis added); *Schuppe v. Harris & Harris, Ltd.*, 2019 U.S. Dist. LEXIS 99422, at *7-8 (N.D. Ill. June 13, 2019) ("Plaintiff alleges that he answered the phone calls purportedly placed by Defendant and that '[e]ach time, Plaintiff [heard a] clear pause prior to being connected to Defendant,' and that Defendant used an ATDS to place the calls to Plaintiff.  These allegations are sufficient.") (internal citation omitted, alterations in original); *Sojka v. DirectBuy, Inc.*, 35 F. Supp. 3d 996, 1003 (N.D. Ill. 2014) ("Gilliam received the identical text message multiple times from 'Alexa Castro from DirectBuy' after specifically responding that he was not interested, which is indicative of the impersonal and automatic nature of the messages.  Coupled with the allegation that members of the putative class received the same messages, it is reasonable to infer that the messages were sent using an ATDS."); *Torres*, 2012 U.S. Dist. LEXIS 110514 at *9-11; *see also Davis*, 2020 U.S. Dist. LEXIS 44977 at *5 ("[P]laintiff alleges that she received impersonal text messages and that they were sent using a vanity short code.  Plaintiff

further alleges that, upon and information and belief, defendant used an ATDS. That is enough to proceed at this stage of the litigation.").  *Cf. Shuler v. TimePayment Corp*, 2020 U.S. Dist. LEXIS 34192, at *9 (E.D. Pa. Feb. 28, 2020) ("Ms. Shuler fails to plead TimePayment used an automatic telephone dialing system or an artificial or prerecorded voice," as she "pleads only she received more than seventeen calls from TimePayment even after she told them to stop calling her.").

In short, GRC is essentially seeking summary judgment through the guise of a motion to dismiss and based on half-truths about Plaintiff's allegations.  Those allegations state a claim for using an ATDS that is plausible on its face, and GRC's motion must therefore be denied.

## II.    The Full Range of Calling Features—*Not* the Mode Actually Used to Make The Offending Calls—is What Determines Whether the Dialer Constitutes an ATDS.

The lynchpin of GRC's motion is that "[l]ogically, companies engaged in debt collection call specific individuals, at specific numbers, about specific debts, not random individuals at random numbers."  *Motion* at 9.  But that misses the point.  Even taking GRC's premise as true, GRC's motion would still fail under both standards because, under current law, a predictive dialer can constitute an ATDS depending on what it has the capacity to do, and a dialer system's capacity cannot be resolved with no factual record at the motion to dismiss stage.

In fact, a virtually-identical argument for dismissal was rejected under <u>both</u> standards as recently as last month:

> Defendants argue that Plaintiffs' allegations suggest they were only called by a predictive dialer and not an ATDS. ***Predictive dialers include a wide variety of devices, some of which do not qualify as an ATDS under the TCPA because they lack the capacity to randomly or sequentially generate numbers to dial.  However, the difference between a predictive dialer and an ATDS is not readily apparent to a recipient of an automated call. Such a determination requires*** information about the technical details of the device that the Defendants used to make the calls— ***information that the Plaintiffs lack prior to discovery.***

*Husain*, 2020 U.S. Dist. LEXIS 27349 at *16 (internal citations omitted, emphasis added); *Zeidel*,

6

2019 U.S. Dist. LEXIS 83988 at *7-9 (same).[2]  Thus, as Plaintiff explained in opposing GRC's

second motion for an extension to file a responsive pleading, and as further explained below,

*Gadelhak* is immaterial.

The TCPA defines an ATDS as "equipment which has the *capacity*—(A) to store or

produce telephone numbers to be called, using a random or sequential number generator; and (B)

to dial such numbers."  47 U.S.C. § 227(a)(1) (emphasis added).

As GRC notes, *Gadelhak* held that subpart (A) of the definition means "a system must have

the *capacity* to either store numbers using a random or sequential number generator <u>or</u> produce

numbers using a random or sequential number generator."  *Motion* at 7 (emphasis added); *accord*

*Gadelhak*, 2020 U.S. App. LEXIS 5026 at *10-14.

If a system can perform either function, then the system constitutes an ATDS—"**whether**

**or not those functions were actually in use for the offending call**."  *King v. Time Warner Cable*

*Inc.*, 894 F.3d 473, 477 (2d Cir. 2018) (emphasis added).  That is because:

> [T]he term "capacity" in the TCPA's definition of a qualifying autodialer should
> be interpreted to refer to a device's current functions, absent any modifications to
> the device's hardware or software. ***That definition . . . does include devices whose***
> ***autodialing features can be activated, as the D.C. Circuit suggested, by the***
> ***equivalent of "the simple flipping of a switch." Within those bounds, however,***
> ***courts may need to investigate, on a case-by-case basis, how much is needed to***
> ***activate a device's autodialing potential in order to determine whether it violates***
> ***the TCPA.***

*Id.* at 481 (internal citation omitted, emphasis added) (quoting *ACA Int'l v. FCC*, 885 F.3d 687,

696 (D.C. Cir. 2018)); *accord Hudson v. Ralph Lauren Corp.*, 385 F. Supp. 3d 639, 645-46 (N.D.

---

[2] Any attempt to distinguish *Husain* on grounds that it was decided one day before *Gadelhak* would
be unavailing because *Husain*, consistent with *Gadelhak*, held that an ATDS must have "the
capacity to store or produce telephone numbers, either randomly or sequentially," and "[i]t must
also have the ability to produce numbers using a random or sequential number generator, as
opposed to merely dialing numbers from a stored list."  2020 U.S. Dist. LEXIS 27349 at *13-14.
In other words, *Husain* adopted the same ATDS definition as *Gadelhak*.

93129_3

Ill. 2019) ("Defendants' argument essentially asks the Court to read the word 'capacity' out of the definition of an ATDS, but nothing supports this view. Even under the narrow interpretation of an ATDS . . . , as long as the device has the [requisite] present capacity . . . , the fact that Defendants did not use the device in that manner does not prevent it from qualifying as an ATDS.") (citing *King*, 894 F.3d at 480).

Again, the features or capacity of a dialer system cannot be determined at the pleading stage, but instead require a fully-developed factual record to resolve.  *See Torres*, 2012 U.S. Dist. LEXIS 110514 at *10-11 ("NES . . . is seeking to address evidentiary issues that are premature at this juncture. . . .  Nor would it even be reasonable to hold plaintiffs in TCPA cases to the standard proposed by NES since it would be virtually impossible, absent discovery, for any plaintiff to gather sufficient evidence regarding the type of machine used for a communication left on a plaintiff's voicemail. Under such a standard, defendants . . . would be virtually immune to TCPA claims, which clearly is not what was intended by Congress in creating the TCPA."); *Davis*, 2020 U.S. Dist. LEXIS 44977 at *4-5 ("[A]t this stage of the proceedings plaintiffs are unlikely to have knowledge of the inner workings of the system defendants use to make calls or send text messages. On a motion to dismiss, before beginning discovery, a plaintiff will rarely,  if ever, know the specific functionality of a system used by a defendant."); *Husain*, 2020 U.S. Dist. LEXIS 27349, at *16 ("Additional facts regarding the capacity of the machine can be ascertained during discovery[.]"); *King*, 894 F.3d at 481 ("On the present record, we do not know whether Time Warner's system had the ability to perform the functions of an ATDS when it made the calls to King, nor what kinds of modifications might be required to permit it to do so. Accordingly, the matter is remanded to the district court to take up those questions in the first instance.").

In addition, allowing discovery as to ATDS does not prejudice GRC.  As a practical matter,

8

93129_3

the system that made the prerecorded voice calls to Plaintiff and the putative classes is most likely the same system that made the calls Plaintiff contends used an ATDS such that the discovery about this system will go forward regardless of whether GRC ultimately has liability for using an ATDS. Similarly, GRC uses both prerecorded voice calls and ATDS calls to collect the debts such that most, if not all, of the class members are likely to have received both types of calls, like Plaintiff. As such, the class discovery will be substantially identical regardless of whether GRC ultimately has liability based on ATDS calls.

## CONCLUSION

In sum, GRC is essentially seeking summary judgment through the guise of a motion to dismiss, and is doing so based on half-truths about the allegations and law. Moreover, even ignoring GRC's material omissions about Plaintiff's allegations, GRC's argument ignores the term "capacity" in the statutory definition of ATDS and the fact that what matters is the features that comprise the dialer system's present capacity, not whether those features were actually used to make the offending calls. Therefore, GRC's motion to dismiss Plaintiff's ATDS claims is baseless and should be denied.

Dated: March 19, 2020

Respectfully submitted,

BONNIE MOSLEY, individually and on behalf of all others similarly situated, Plaintiffs

By:  /s/ Theodore H. Kuyper
Keith J. Keogh
Theodore H. Kuyper
KEOGH LAW, LTD.
55 W. Monroe St., Suite 3390
Chicago, Illinois 60603
(312) 726-1092
keith@keoghlaw.com
tkuyper@keoghlaw.com

*Attorneys for Plaintiff and the Putative Class*

9

93129_3

## CERTIFICATE OF SERVICE

I hereby certify that, on March 19, 2020, I caused a copy of the foregoing **Plaintiff's Response in Opposition to General Revenue Corporation's Motion to Dismiss in Part** to be served upon all counsel of record via electronic filing using the CM/ECF system.

 /s/ Theodore H. Kuyper